CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

APR 1 1 2013

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal Action No. 7:10CR00058 |
| | ) | Civil Action No. 7:12CV80462 |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| BRIAN SCOTT FREEMAN, | ) | |
| | ) | By: Hon. Glen E. Conrad |
| Defendant. | ) | Chief United States District Judge |

Brian Scott Freeman, a federal inmate proceeding pro se, filed this action as a motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. The government has filed a motion to dismiss to which Freeman has responded, making the matter ripe for disposition. For the reasons that follow, the government's motion to dismiss will be granted and Freeman's motion to vacate will be denied.

## Background

On September 16, 2010, Freeman and four other individuals were named in an eight-count indictment returned by a grand jury in the Western District of Virginia. Count One charged Freeman with conspiracy to distribute 500 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A), and 846. Count Seven charged him with distribution of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C).

Following the return of the indictment, a search warrant was executed at Freeman's residence. During the search, law enforcement officers discovered a gun safe containing 49.6 grams of methamphetamine, five firearms, ammunition, two sets of scales, and a police scanner.

Freeman subsequently entered a plea of guilty to Count One of the indictment, pursuant to a written plea agreement. The plea agreement advised Freeman that the conspiracy count carried a mandatory term of imprisonment of ten years to life under 21 U.S.C. § 841(b)(1)(A).

By signing the agreement, Freeman certified that he was pleading guilty because he was, in fact, guilty of the offense charged and not because of any threats or promises; that he had discussed the plea agreement and all other matters pertaining to the indictment with his attorney; and that he was fully satisfied with his attorney and the attorney's advice. (Plea Ag. at 2, 11.) Under the terms of the plea agreement, Freeman stipulated that he was responsible for more than five but less than fifteen kilograms of methamphetamine and, thus, subject to a base offense level of 36 under the United States Sentencing Guidelines. Freeman also stipulated that he was subject to a two-level enhancement for possessing a firearm, pursuant to § 2D1.1(b)(1) of the Sentencing Guidelines. Additionally, Freeman agreed to forfeit the five firearms seized during the search of his residence.

During the plea hearing conducted pursuant to Rule 11 of the Federal Rules of Criminal Procedure, the court established that Freeman possessed the capacity to make a voluntary, intelligent, and informed plea. (Plea Hearing Tr. at 6-7.) The court also established that Freeman understood the charge to which he was pleading guilty, as well as the purpose of the Rule 11 proceeding. (Id. at 8-11.)

The court instructed the Assistant United States Attorney ("AUSA") to review the salient portions of the plea agreement that Freeman had reached with the government. In response, the AUSA outlined several sections of the plea agreement, including the section summarizing the potential penalties that Freeman faced upon conviction. (Id. at 8.) The AUSA also explained the elements of the conspiracy offense with which Freeman was charged, and noted that the defendant had stipulated that he should be held responsible for between five and fifteen kilograms of methamphetamine and for possessing a dangerous weapon. (Id. at 9.) Upon being

asked if the AUSA's summary of the plea agreement was consistent with his own understanding of the agreement, Freeman responded in the affirmative. (Id. at 10.)

The court then inquired as to whether Freeman was voluntarily pleading guilty. In response to questions from the court, Freeman confirmed that no one had made any promises or representations regarding the disposition of the case other than those set forth in the plea agreement; that no one had attempted to coerce, force, or compel him to plead guilty; and that no one had exerted undue influence over him. (Id. at 10-11.) When asked if he understood that there were "no guarantees about [his] sentence," and that the sentence imposed might be different from what he was told to expect by his attorney, Freeman responded in the affirmative. (Id. at 16.) Freeman also affirmed that he understood that there would be a "substantial period of incarceration" if he pled guilty to the conspiracy offense, and that he would be required to serve "the full term imposed, less any good time earned." (Id. at 19.)

The court subsequently reviewed the constitutional rights that Freeman would waive if he entered a plea of guilty. Notwithstanding all of the valuable constitutional rights that he would waive by pleading guilty, the fact that the offense to which he was pleading guilty carried a mandatory term of imprisonment of ten years to life, and the fact that he would be required to serve the full term imposed less any good conduct time earned, Freeman indicated that he still wished to enter a plea of guilty. (Id. at 30.)

The court asked Freeman to explain what he had done that made him believe that he was guilty of the conspiracy offense. In response, Freeman indicated that he sold methamphetamine in concert with other people; that he bought methamphetamine pursuant to an agreement with

3

other people; and that he was involved in the distribution of at least five kilograms of methamphetamine. (Id. at 31.)

The court then called upon the government to present any evidence that would support Freeman's plea of guilty. Proceeding by proffer, the AUSA summarized the government's evidence as follows:

> Your honor, the events of Mr. Freeman's case occurred in 2010 in Carroll County or . . . at least up through November of that year. He was one of the group of people getting directly from Donald Vaughn and distributing beyond that. The reports were that he was receiving larger quantities than the other folks named in the indictment. We know this for a number of reasons. In this case, there were two controlled purchases of methamphetamine from him. There, as well, were four cooperators. One of those controlled buys was interesting in that he actually was caught on tape discussing with the informant his dealings with Vaughn and the kind of volume of business he was doing with Vaughn and how that was going.
>
> After he was indicted, we started looking for him and that led to a search warrant of his residence on the 19th of October where there was a gun safe found that contained the firearms listed in the plea agreement, as well as a quantity of methamphetamine, somewhere around 50 grams, by lab. When he was finally found and arrested in November of this year, [and] advised of his rights under Miranda,[1] [he] claimed the guns and the drugs in the safe. I think it would be fair to say that if the matter had gone to trial, there would have been a superseding indictment to discuss those things further.
>
> All told, foreseeable to him was in the range of 5 to 15 kilograms, and this is Mr. Freeman.

(Id. at 32-33.)

The court subsequently inquired as to whether the AUSA's summary of the evidence was consistent with Freeman's understanding as to what the evidence would have been if the matter had gone forward to trial. Freeman responded in the affirmative. (Id. at 33.)

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

At the conclusion of the hearing, the court asked whether Freeman was satisfied with his attorney's representation, and whether he had any questions regarding anything that had been said during the hearing. Freeman indicated that he was satisfied with the services provided by his attorney, that he understood "everything" that had been discussed during the hearing, and that he did not have any questions for the court. (Id. at 35-36.)

Prior to the sentencing hearing, a probation officer prepared a presentence investigation report. Consistent with the stipulations in the plea agreement, the probation officer determined that Freeman should be held accountable for more than five but less than 15 kilograms of methamphetamine and, thus, subject to a base offense level of 36. Additionally, Freeman received a two-level enhancement for possession of a firearm and a three-level reduction for acceptance of responsibility, resulting in a total offense level of 35. When combined with a criminal history category of I, Freeman's total offense level gave rise to a range of imprisonment of 168 to 210 months under the Sentencing Guidelines.

The court conducted Freeman's sentencing hearing on June 22, 2011. At the start of the hearing, Freeman confirmed that he had received the opportunity to review the presentence investigation report to his satisfaction. (Sentencing Tr. at 3.) Freeman's attorney advised the court that the defendant had no objections to the factual findings made in the report or the probation officer's proposed application of the Sentencing Guidelines. Consequently, the court adopted the report, finding that Freeman's total offense level and criminal history category gave rise to a recommended term of imprisonment of 168 to 210 months. When given the opportunity to offer any evidence or argument in mitigation, Freeman's attorney argued that Freeman's efforts to rehabilitate himself warranted a variance from the applicable Guidelines range. After

considering the factors set forth in 18 U.S.C. § 3553(a), the court varied slightly from the Guidelines range and imposed a term of imprisonment of 156 months.

On June 18, 2012, Fitzgerald executed the instant motion to vacate under 28 U.S.C. § 2255, asserting claims of ineffective assistance of counsel. The government has moved to dismiss the motion, arguing that each of the asserted claims is without merit. The defendant filed a response to the motion on December 3, 2012. The matter is now ripe for review.

## Discussion

Freeman's claims of ineffective assistance can be divided into two groups. In the first group of claims, Fitzgerald asserts that his attorney provided ineffective assistance by coercing him to enter into the plea agreement with the government. In his second group, Freeman claims that his attorney provided ineffective assistance by failing to object to certain portions of the presentence report. For the following reasons, the court concludes that both groups of claims are without merit.[2]

Claims of ineffective assistance are reviewed under the standard enunciated by the Supreme Court of the United States in Strickland v. Washington, 466 U.S. 668 (1984). In order to succeed on such a claim, a defendant must show: (1) that his "counsel's performance was deficient," and (2) that "the deficient performance prejudiced the defense." Strickland, 466 U.S. at 687. With respect to the first prong, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." Id. at 688. With respect to the second, the

---

[2] An additional claim, asserting that his attorney failed to advise him of the possibility of making an "open plea of guilty" (Am. § 2255 Mot. at 2), has been expressly "abandon[ed]" by Freeman (Reply Br. at 2). Accordingly, that claim will also be dismissed.

defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id.

I. **Group One**

In challenging the effectiveness of his attorney's assistance, Freeman first claims that his attorney coerced him to enter into the plea agreement with the government. Specifically, Freeman alleges that his attorney told him that he would be sentenced to life imprisonment if he did not enter into the plea agreement. Freeman also alleges that his attorney falsely advised him that he would be eligible for the residential drug treatment program offered by the Bureau of Prisons, if he entered into the plea agreement.[3] Upon review of the record, the court concludes that this group of claims is without merit.

While Freeman may now regret his plea of guilty, his claims of coercion are belied by the record. As set forth above, the plea agreement signed by Freeman specifically states that his decision to plead guilty was not based on "any threats or promises." (Plea Agreement at 2.) Moreover, during the Rule 11 hearing, Freeman stated, under oath, that he understood that he would be subject to a term of imprisonment of ten years to life imprisonment if convicted of the

---

[3] The court construes this claim to allege that Freeman's attorney falsely represented that he would be entitled to early release upon his successful completion of a residential drug treatment program. Under 18 U.S.C. § 3621(e)(2)(B), the Bureau of Prisons has discretion to reduce the sentence of an inmate convicted of a nonviolent offense by up to one year, if the inmate successfully completes a residential drug treatment program. See 18 U.S.C. § 3621(e)(2)(B). In implementing § 3621(e)(2)(B), the Bureau of Prisons has established criteria for determining eligibility for early release. The Bureau of Prisons explains the eligibility criteria in Program Statements 5331.02 and 5162.05. Program Statement 5162.05 provides that a person convicted of a drug offense under 21 U.S.C. §§ 841 and 846, who has received a two-level sentencing enhancement for possession of a firearm or other dangerous weapon, will be precluded from receiving certain Bureau program benefits, including early release consideration under 18 U.S.C. § 3621(e)(2)(B). See Derrick v. Berkebile, No. 5:10-0740, 2011 U.S. Dist. LEXIS 107134, at *7-8 (S.D. W.Va. Aug. 3, 2011) (citing Program Statement 5162.05 § 4).

conspiracy offense, and that he would be required to serve the full term of imprisonment imposed less any good conduct time earned while incarcerated. (Plea Hearing Tr. at 8-9, 19.) Freeman affirmed that no one had promised him any particular sentence, or made any other promises or representations other than those set forth in the plea agreement. (Plea Hearing Tr. at 10-11.) Freeman also affirmed that no one had tried to force, coerce, or compel him to plead guilty, and that he was pleading guilty because he was, in fact, guilty of the conspiracy offense charged in the indictment. (Id. at 11.)

Freeman has not offered any evidence that would undermine his sworn statements regarding the voluntariness of his guilty plea. Consequently, Freeman is bound by the statements that he made during the Rule 11 hearing, and his current allegations to the contrary must be rejected. See Fields v. Atty. Gen. of Md., 956 F.2d 1290, 1299 (4th Cir. 1992) ("Absent clear and convincing evidence to the contrary, a defendant is bound by the representations he makes under oath during a plea colloquy.") (citing Blackledge v. Allison, 431 U.S. 63, 74-75 (1977)); see also United States v. Lemaster, 403 F.3d 216, 221-222 (4th Cir. 2005) ("[I]n the absence of extraordinary circumstances, the truth of sworn statements made during the Rule 11 colloquy is conclusively established, a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements.").

Moreover, even if Freeman could establish that his attorney provided erroneous advice regarding the sentence he could expect to receive if convicted at trial, or his eligibility for early release upon the successful completion of a residential drug treatment program, the court concludes that Freeman is nonetheless unable to satisfy the prejudice prong of the Strickland test. In the context of a guilty plea, a defendant can show prejudice only by demonstrating "a

reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985). To satisfy this element, a defendant "must convince the court" that such a decision "would have been rational under the circumstances." Padilla v. Kentucky, 559 U.S. 356, 130 S. Ct. 1473, 1485 (2010). Accordingly, the defendant's "subjective preferences . . . are not dispositive; what matters is whether proceeding to trial would have been objectively reasonable in light of all of the facts." United States v. Fugit, 703 F.3d 248, 260 (4th Cir. 2012); see also Pilla v. United States, 668 F.3d 368, 373 (6th Cir. 2012) ("Pilla cannot [establish prejudice] by merely telling us now that she would have gone to trial then if she had gotten different advice. The test is objective, not subjective . . . .").

In this case, Freeman falls far short of meeting this standard. As summarized above, the evidence to support his conspiracy charge was overwhelming. During the course of the investigation of methamphetamine trafficking in Carroll County, agents developed a number of cooperating sources who had routinely purchased methamphetamine with and from Freeman, and who were available to testify that Freeman was a large-scale methamphetamine supplier. The government could have also adduced evidence that Freeman was involved in a controlled purchase of methamphetamine at his residence, and that a search of his residence following the return of the indictment revealed a safe containing 49.6 grams of methamphetamine, five firearms, ammunition, two sets of scales, and a police scanner. Had Freeman proceeded to trial, he would have possibly faced additional charges relating to the evidence seized during the search of his residence. By pleading guilty, Freeman was able to avoid indictment on additional

charges, and receive a three-level reduction for acceptance of responsibility, which lowered his total offense level and, thus, his applicable Guidelines range of imprisonment.

Against this backdrop, Freeman is unable to show that declining the government's plea offer and proceeding to trial "would have been rational under the circumstances." Padilla, 130 S. Ct. at 1485. Accordingly, his first group of ineffective assistance claims fails for lack of prejudice under Strickland and Hill. See Pilla, 668 F.3d at 373 (holding that "no rational defendant in Pilla's position would have proceeded to trial," where the defendant "faced overwhelming evidence of her guilt," "would have been convicted[,] and would have faced a longer term of incarceration") (internal quotation marks omitted).

## II. Group Two

Freeman also claims that his attorney provided ineffective assistance by failing to object to certain portions of the presentence investigation report. Specifically, Freeman asserts that he never traded guns for drugs as alleged in paragraph fourteen of the report, which summarizes information provided during an interview of a cooperating witness. Freeman also asserts that there was no factual basis for the amount of methamphetamine attributed to him in the report. For the following reasons, the court concludes that this group of claims is also without merit.

The probation officer determined that Freeman should be held accountable for at least five but less than fifteen kilograms of methamphetamine. To the extent Freeman now asserts that there was no factual basis for this determination, such assertion is belied by the record. As set forth above, Freeman stipulated in the plea agreement that he should be held responsible for at least five but less than fifteen kilograms of methamphetamine. Likewise, Freeman acknowledged under oath, during the Rule 11 hearing, that he was "involved in such quantities."

(Plea Hearing Tr. 31.) Given Freeman's own admissions, he is unable to establish that counsel's failure to object to the drug weight was objectively unreasonable or prejudicial under Strickland.

The court must also reject Freeman's claim that counsel was ineffective in failing to object to the portion of the presentence report which summarized an interview with a cooperating witness, during which the witness reported that he provided firearms to Freeman in exchange for methamphetamine. Upon review of the record, the court concludes that Freeman is unable to demonstrate that there is a reasonable probability that the court would have imposed a lower sentence if this information had been stricken from the presentence report.

Under § 2D1.1(b)(1) of the Sentencing Guidelines, a two-level enhancement is authorized if a defendant possessed a firearm during the offense. Application Note 3 to § 2D1.1 explains that the enhancement "should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." In order to prove that a firearm was present, "the [g]overnment need show only that the weapon was possessed during the relevant illegal drug activity." United States v. McAllister, 272 F.3d 228, 234 (4th Cir. 2001).

In this case, Freeman stipulated in the plea agreement that he should receive a two-level enhancement for possessing a dangerous weapon. This stipulation was based on the evidence seized during the search of Freeman's residence. (Plea Hearing Tr. at 32-33.) As set forth above, when the police searched Freeman's residence, they discovered five firearms located in the same safe as nearly 50 grams of methamphetamine and two sets of scales. Such evidence, which was outlined during the Rule 11 hearing and in the presentence investigation report, clearly provided a sufficient predicate for the application of the two-level enhancement under § 2D1.1(b)(1). Accordingly, even if the court had stricken the paragraph summarizing the

cooperating witness's alleged interactions with Freeman, it would not have altered Freeman's total offense level or the resulting guideline range.

Moreover, the court made no reference to the challenged portion of the presentence report in determining an appropriate sentence under 18 U.S.C. § 3553(a). Instead, the court noted that Freeman's eligibility for the firearm enhancement, combined with the quantity of methamphetamine for which he was responsible, compelled the need for a somewhat harsher sentence, and weighed against a greater reduction from the Guidelines range. (Sentencing Tr. at 13-14.) Because the firearm enhancement was properly applied in Freeman's case, regardless of the veracity of the information provided by the cooperating witness, the defendant is unable to satisfy the prejudice prong of <u>Strickland</u>.

## Conclusion

For the reasons stated, the court will grant the government's motion to dismiss and deny Freeman's motion to vacate. Additionally, because Freeman has failed to demonstrate "a substantial showing of the denial of a constitutional right," the court will deny a certificate of appealability. <u>See</u> 28 U.S.C. § 2253(c).

The Clerk is directed to send certified copies of this memorandum opinion and the accompanying order to the defendant and all counsel of record.

ENTER: This 11th day of April, 2013.

*/s/ Glen Conrad*
Chief United States District Judge